## The People v. Horace Becker.

*Robbery—Testimony of complaining witness—Admissibility of stenographer's notes—Sentence before settlement of exceptions.*

On the trial of an information for robbery, unless the possession by the prosecuting witness of the money of which he claims to have been robbed is contested, the defence cannot as a matter of right question him to show contradictory statements as to where he obtained it.

On the examination in chief the prosecuting witness testified that the prisoner told him who he was as they were walking in the street after leaving a saloon just before the robbery. On cross-examination he

said he was told this either in the saloon or in the street. He was then asked whether on a former trial he did not swear that it took place in the saloon. The judge excluded the question. *Held*, that the exclusion was not a plain case of error.

In inquiring into the testimony of a witness on a former trial with a view to his impeachment, it is not necessary to read the testimony from the stenographer's minutes, and then ask him if he swore as there stated. The stenographer's minutes not being written out and signed by him, are not evidence against the witness, and are not therefore to be assumed as correct in his favor.

On a trial for robbery the prosecuting witness testified that he was taken by the prisoner to a house of ill-fame, and thence into the street where he was robbed. The defence then sought to show that the prisoner was not accustomed to visit such places. *Held* immaterial.

*Held also* to be immaterial that the prisoner received moneys from various sources about that time; it not being claimed that the stolen money was found in his possession.

The circuit court has the right to pass sentence in criminal cases without waiting for the settlement of any exceptions which may have been taken.

Error to Saginaw.  Submitted Jan. 26.  Decided Apr. 5.

INFORMATION for robbery.  Respondent brings error. Affirmed.

*Tarsney & Weadock* and *A. C. Maxwell* for plaintiff in error.

Attorney General *Jacob J. Van Riper* for the People. Settlement of exceptions does not stay judgment: *Crofoot v. People* 19 Mich. 255.

COOLEY, J.  Plaintiff in error was indicted and convicted of the robbery of one Henderson, in the city of East Saginaw, on the ·evening of September 4, 1880.  Henderson was a resident of Livingston county, and went to East Saginaw on the day named to purchase casks in which to put up cider.  His story was that he went to that place with about $250 in money, $50 of which he gave to a Mr. Brado to expend for him, that having the remainder with him he went into Carter's saloon to inquire for casks, and there saw Becker, with whom he was unacquainted; that in the saloon

he was induced to play three or four games of cards with Becker and others; that when he left them Becker accompanied him, pretending to be able to show him where casks could be found; that in walking along Becker told him he was a deputy sheriff of Bay county and was or had been a deputy United States marshal; that Becker took him to various places where they inquired for casks but found none; that they walked to a brick building on a corner with a saloon underneath and stairs on the outside; that Becker went up the stairs and Henderson hesitated and objected, but Becker insisted, and they went in where there were women and called for something to drink; that Henderson told Becker he wanted to get out and attend to his business; that from there they went into the streets and apparently around several blocks until they heard music, and then Becker wanted Henderson to go in, but he replied he wanted to go to the Everett House; that Becker said after going in he would take him there; that they stopped where the music was, and found a private dance was going on, and were not admitted; that they started along again, and Becker offered to bet that they were not forty rods from the Everett House and made a movement to get out some money; that Henderson said he would not bet, and would not go any further in that direction; whereupon Becker with an oath seized him, took away his pocket-book and ran off. It was then about nine o'clock in the evening, and the place was lonely and dark. Henderson immediately made an outcry, and Becker was arrested the next morning.

Becker was twice tried; the jury not agreeing on the first trial. On the second trial, after Henderson had given his account of the transaction, substantially as is above set forth, he was questioned about his journey from Livingston county to East Saginaw, and he stated that at Fentonville he received $10.90 for butter which he sold. He was then asked whether on the last trial he did not testify that he got for the butter $18 to $24. The question was objected to, and the court ruled that he need not answer, as it related to a matter collateral to the issue.

Whether Henderson had any money on the occasion specified it was of course important to know, but where or by whom he obtained it was of no importance. In the record there is no intimation that the fact of his having money was contested. He had sworn to the possession of two hundred dollars, and that it was in his pocket-book at the time of the robbery. The trial judge might have suffered the defence to question him with a view to test the truthfulness of this statement, but unless the main fact of the possession of the money was contested, it could not have been a matter of right for the defence to go into all the particulars and require the complaining witness to account for all the money. If the purpose was merely to extract from him contradictory statements with a view to impeachment, the judge was correct in holding that the inquiry was collateral to the main issue, and the answers of the witness could not be contradicted. If there was any other purpose it should have been stated, that the judge might rule understandingly upon the proposition.

Henderson was further questioned on cross-examination as to the time and place when and where Becker told him who he was, and stated that either at Carter's or on the walk Becker said, " If you go to Bay City, ask for me. My name is Horace Becker." He was then asked, " Didn't you testify on the last trial of this case that he told you that in Carter's restaurant in the presence of McArthur and Sweet?" This was objected to unless his attention was called to the minutes of his testimony on the former trial, and they were read to him. The judge sustained the objection.

From what appears in this record we cannot affirm that the objection had force. Testimony on trials in the circuit court in the principal counties of the State is now taken by official stenographers, but it is not always written out and filed, and the witness never signs it in law cases, unless under exceptional arrangements. The stenographer retains his minutes, and their correctness depends on his skill and reliability. They do not constitute an official document, but are the materials by the aid of which a narrative of the

proceedings on the trial may be put in due form whenever it shall be important. But the stenographer's minutes do not bear upon their face any such evidence of accuracy as the signing by the witness himself gives to a deposition. Where he has not personally attested them so as to make them evidence against himself, he cannot insist that their accuracy shall be assumed in his favor.

If, therefore, in this case the previous evidence of the witness had not been subscribed by him, the objection to the proposed question was put upon untenable ground. But it does not necessarily follow that legal error was committed in sustaining it. The question had no purpose in the case except to impeach the witness by showing contradictory statements made by him ; and unless an answer one way or the other would have had a tendency to that end, the respondent could not have been legally entitled to it. The point actually before us therefore is, whether the evidence already given by the witness would stand in contradiction to that supposed by the question to have been given on the former trial.

On this trial the witness had stated that Becker told him who he was and where he lived, either at Carter's restaurant or on the walk after leaving it. The defence then sought to show that on the former trial he testified that this statement was made to him in the restaurant where they had met McArthur and Sweet. Suppose the fact had appeared ; how would that have contradicted the evidence now given? He has not denied now that the statement was made in the restaurant, but on the contrary has affirmed that the occurrence did take place either there or in the street. There may have been a discrepancy, but certainly no contradiction.

We do not doubt that the judge might in his discretion have suffered the question to be put; and perhaps he ought to have done so. But questions of this sort may be, and no doubt often are, asked unreasonably, with no other object in view than to confuse the witness by involving him in contradictions which are more apparent than real, and which it may be evident to the judge are due to his want of self-pos-

session rather than to his want of candor. If at any time it becomes obvious to the judge that counsel is unreasonably consuming time in an examination that departs from the main issue, and has for its purpose nothing beyond embarrassment and confusion to the witness, the judge ought in his discretion, in the interest of justice, to terminate it. There can never be a legal right to put questions the answers to which could not on any just consideration influence the result; and such, we think, was the case here.

The defence offered to show by several witnesses that Becker had received moneys at about the time of the alleged offence, and also that the morning after his arrest he pawned a watch for fifteen dollars. This is said now to have been to account for Becker's possession of money. The court excluded the evidence. It does not appear from the record that the prosecution claimed to have found the money of Henderson in Becker's possession, and in the absence of any such claim the ruling on this point was correct.

On an assumption that one of the places to which Henderson said Becker took him to was a house of ill-fame, the defence offered to prove by Becker himself that he was not in the habit of going to such places. The object of this was said on the argument to have been "to remove if we could any impression unfavorable to him arising from the fact of his presence there upon that occasion." It was not, then, to raise a presumption against the truth of Henderson's evidence, but to remove as far as possible the unfavorable inferences that would naturally be drawn from the established fact. In the same connection and for the same purpose apparently the defence asked Becker to explain how he became aware that the house was one of ill-fame. The answer to this was not allowed. The judge was undoubtedly right in his rulings. The prosecution did not seek to prove and did not pretend that Becker was in the habit of visiting such places. And if he was not accustomed to frequent them, the prosecution might with the greater force urge before the jury that his going to one on

this occasion and endeavoring to induce Henderson to drink there, and then trying to get into a dance-house at another place for no apparent reason consistent with honesty, must have had for its purpose the very crime Henderson swears was committed upon him.

Complaint is made that the prisoner was sentenced before the end of the term at which he was convicted, and therefore before the time had expired for settling exceptions. But there is no statute and no rule to preclude this. Under the statute if the judge thinks the exceptions are not frivolous, he may after they are settled certify them to this court for our opinion before sentence; but he can judge whether they are frivolous or not as well before the bill of exceptions is settled as afterwards, and is under no necessity of delaying the sentence to await the action of counsel in settling the bill.

There are some other exceptions, but we think them without plausibility. The conviction must be affirmed.

GRAVES, C. J. and CAMPBELL, J. concurred.
MARSTON, J. did not sit in this case.